UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
JASON GIAGRANDE,

                Plaintiff,

  - against -

XTM, INC., and MARILYN SCHAFFER,

                Defendants.
------------------------------------------------------------ X

Civil Case No.

**COMPLAINT**

**Jury Trial Demanded**

Plaintiff Jason Giagrande ("Giagrande" or "Plaintiff") by and through his attorneys, Wigdor LLP, against Defendants XTM, Inc. ("XTM" or the "Company") and Marilyn Schaffer ("Schaffer") (collectively, "Defendants"), hereby alleges as follows:

## PRELIMINARY STATEMENT

1.      Jason Giagrande worked as the Head of Business Strategy – US for XTM, a financial technology firm that serves the hospitality industry. He was, by all accounts, an exceptional performer. Beginning in 2022, however, he began protesting to Schaffer, XTM's Chief Executive Officer ("CEO"), about what he believed were illegal activities. Among these, Giagrande noticed that Schaffer made false statements about XTM's financial status to lure investors. She and XTM also hired a vendor to buy and sell XTM shares to give the false impression that the Company's stock was actively traded – a form of market manipulation known as "wash trading." Rather than refrain from further illegal acts, Schaffer summarily stopped paying Giagrande's compensation, effectively – and unlawfully – terminating his employment.

2.      Giagrande brings this action to remedy Defendants' violations of New York law.

## PARTIES

3.　　Plaintiff Giagrande is an individual domiciled in New York. He was, at all relevant times, an employee of Defendant XTM.

4.　　Defendant XTM is a technology firm that provides mobile wallet and banking services to the hospitality industry. XTM is a corporation organized under the laws of Canada with its principal place of business and corporate headquarters at 67 Mowat Avenue, Unit 437, Toronto, Ontario, Canada, MGK 3E3. XTM was, at all relevant times, Giagrande's employer.

5.　　Defendant Schaffer is an individual domiciled in Canada. She was, at all relevant times, CEO and GiaGgande's supervisor.

## JURISDICTION, VENUE AND CHOICE OF LAW

6.　　This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00 and the parties are diverse.

7.　　This Court has personal jurisdiction over Defendants, who agreed that all disputes related to their Agreement would be heard in the state or federal courts of New York located in New York County. (Exhibit A, ¶ 21).

8.　　Venue is proper in the Southern District of New York as Defendants agreed that all disputes related to their Agreement would be heard in the state or federal courts of New York located in New York County. (Exhibit A, ¶ 21). Moreover, a substantial part of the events or omissions giving rise to this action occurred in this district.

9.　　Defendants also agreed that their Agreement shall be governed by the laws of the State of New York. (Exhibit A, ¶ 21).

**FACTUAL BACKGROUND**

A.  **Giagrande's Employment and Responsibilities**

10. On or about May 28, 2021, Defendants hired Giagrande as their Head of Business Strategy – US.

11. Giagrande was responsible for integrating XTM into the U.S. market.

12. At the time, XTM did not yet have a product that could be used in the U.S. because of various tax and compliance issues. XTM's existing product was sold only in Canada.

13. Nonetheless, as XTM's products team worked on developing the new product, Giagrande worked on developing the U.S. business. For instance, he introduced an acquisition to XTM that would have brought the Company over $20 million per year in revenue, while simultaneously providing XTM with a U.S. compliant product.

14. Moreover, Giagrande consistently provided leads and secured business with the sales team in the Canadian market, despite it not being part of his job description.

15. Giagrande was also instrumental in guiding XTM after its acquisition of TipPool, a gratuity distribution software company.

16. In addition, Giagrande worked closely with complimentary service companies on strategic partnerships and worked closely with XTM's VP of Sales on pitches for large potential clients.

17. Further, Giagrande spoke on behalf of XTM at multiple conferences and represented XTM at the Restaurants Canada Show, Terroir Symposium, Money 20/20 Las Vegas and on over 100 investor calls.

18. Giagrande also traveled to Canada not less than five times to meet with other XTM employees, banks, investors and potential strategic partners.

19. XTM used and relied upon Giagrande's achievements and reputation in the hospitality industry to give the Company credibility with investors and restaurant groups.

B. **Giagrande Protests Illegal Activity**

20. Beginning in or about 2022, Giagrande began to voice significant concerns to Schaffer about what he believed were unlawful investor disclosures and violations of regulatory rules.

21. For instance, in or about February 2022, Giagrande protested that Schaffer was inflating the targets for the sales team. Schaffer knew the targets were unattainable. Nonetheless, she reported the inflated targets to investors[1] to deceive them into believing that the Company was more successful.

22. In or about March 2022, Schaffer caused the creation of investor presentations falsely claiming that XTM was generating $30 million in revenue. In fact, Schaffer inflated the figure by approximately $20 million based on XTM acquiring another company. At the time of Schaffer's statements to investors, the acquisition was in its early stages (only a letter of intent had been drawn up). Moreover, Schaffer concealed from investors that XTM needed additional capital to complete the acquisition. Nonetheless, Schaffer presented the acquisition to investors as, essentially, a done deal.

23. Schaffer also made similar false statements publicly to the Wall Street Reporter, an online publication.

24. Giagrande protested Schaffer's false statements to investors. He told Schaffer that XTM does not have the capital to complete the acquisition.

25. Schaffer responded that XTM would either raise the money or that she and

---

[1] For ease of reference, the term "investors" refers to existing and potential investors.

other board members would put up the money to fund acquisition. This, too, was false, and the acquisition never happened.

26. Also around March 2022, Schaffer falsely reported that three major restaurants groups were launching XTM's product. The restaurant groups were merely in discussions with XTM.

27. Giagrande protested to Schaffer that merely being in discussions does not mean that the product was being rolled out to the restaurant groups. Indeed, the process to onboard a group of restaurants typically takes significant time. Schaffer responded, "Don't let the facts ruin a good story."

28. In or about June 2022, Giagrande protested that XTM was not properly insured under Canadian law. XTM was legally required to maintain separate insurance for each account administered by its platform. However, XTM only maintained insurance for its "master wallet" and only for $200,000 – far less than what was required.

29. Giagrande protested this violation repeatedly during weekly executive calls with Schaffer. He told Schaffer that XTM's non-compliance would "catch up" to the Company and become a "major issue." He further stated that XTM was "misleading users" by not protecting their money.

30. Schaffer summarily rejected Giagrande's protests, stating that the requirements were the result of a "stupid law" that did not "make sense."

31. In or about mid-2022, Giagrande protested XTM's payments to a vendor hired to buy and sell XTM stock. The purpose of the payments was to inflate the "volume" of XTM transactions to give the appearance of liquidity, thus making XTM shares more attractive to investors.

32. Giagrande believed that this arrangement, often referred to as "wash trading," was unlawful and questioned Schaffer about the practice.

**C.    Defendants Retaliate Against Giagrande**

33. Shortly thereafter, in or about January 2023, XTM stopped paying Giagrande's salary, as required by his employment agreement, effectively terminating his employment.

34. Moreover, Defendants continued to withhold from Giagrande his signing bonus of equity valued at $20,000 and an additional 1,500,000 in equity shares required by Paragraph 4 of the Agreement. (Exhibit A, ¶ 4(d)).

**D.    Giagrande Exercises His Right to Terminate the Agreement for Good Reason**

35. Based upon XTM's continued refusal to pay Giagrande in accordance with the Agreement, Giagrande terminated the Agreement for Good Reason on August 15, 2023.

36. As result, in accordance with Section 5(e)(4) of the Agreement, XTM is required to pay Giagrande $180,000 in severance and vest 3,500,000 equity shares. (Exhibit A, ¶ 5(e)(4)).

37. To date, XTM has refused to pay the $180,000 severance payment and award and vest the additional 3,500,000 shares.

38. Accordingly, XTM is in breach of its contractual obligations, and Giagrande is entitled to damages.

## FIRST CAUSE OF ACTION
### (Breach of Contract)
### *Against XTM*

39. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

40. XTM and Giagrande entered into the Agreement, which is a binding and valid contract.

41. Giagrande performed all of his obligations under the Agreement and has not breached the Agreement in any way.

42. Pursuant to the Agreement, XTM has failed to: (1) pay Giagrande $70,000 in wages; (2) deliver Giagrande's signing bonus of $20,000 in vested equity; (3) deliver and vest Giagrande's 1,500,000 earned shares; (4) pay Giagrande $180,000 severance; and (5) award and vest 3,500,000 shares.

43. Further, Giagrande is entitled to any loss in value for XTM's failure to vest Giagrande's RSUs at the appropriate time. The value of the RSUs owed to Giagrande at the date they were required to be paid.

44. XTM has breached its obligations under the Agreement, and their breach has proximately caused Giagrande's damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing)
### *Against XTM*

45. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

46. XTM and Giagrande entered into the Agreement, which is a binding and valid contract, and subject to the implied covenant of good faith and fair dealing.

47. XTM owes Giagrande a duty to act in good faith with respect to its performance under the Agreement.

48. Pursuant to the Agreement, Giagrande reasonably expected to be paid in a timely manner for his employment.

49. XTM failed to terminate Giagrande, continued to utilize his services, advertise and capitalize on his employment and has refused in bad faith to pay Giagrande the amounts owed under the Agreement without valid explanation or justification despite Giagrande performing all of his obligations under the Agreement.

50. XTM's bad faith has proximately caused Giagrande's damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (In the Alternative, Unjust Enrichment)
### *Against XTM*

51. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

52. Giagrande served as the Head of Business Development – US for XTM from May 2021 through August 2023.

53. XTM has received a benefit as a result of Giagrande's efforts and services during this employment with XTM.

54. It would be against all equity to allow XTM to benefit from their failure to pay Giagrande for his efforts and services in accordance with the Agreement.

55. XTM has been unjustly enriched at Giagrande's expense, and Giagrande has been damaged by that unjust enrichment in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(Violations of N.Y. Labor Law Section 193)**
*Against all Defendants*

56.   Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

57.   Pursuant to the Agreement, XTM was obligated to pay Giagrande $10,000 per month in salary and other compensation.

58.   Defendants failed to pay Giagrande's compensation.

59.   In accordance with N.Y. Labor Law, Giagrande is not only entitled to his unpaid wages, but also for liquidated damages equal to the amount of those unpaid wages. In addition to double his unpaid wages, Giagrande is also entitled to all attorneys' fees, and pre-judgment interest.

**FIFTH CAUSE OF ACTION**
**(Violations of N.Y. Labor Law Section 740)**
*Against all Defendants*

60.   Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

61.   Plaintiff disclosed to Defendants activities, policies or practices that he reasonably believed were in violation of law, rule or regulation.

62.   As a result, Defendants retaliated against Giagrande by, among other things, refusing to pay his earned compensation and effectively terminating his employment.

63.   As a direct and proximate cause of Defendants' unlawful conduct, Giagrande has suffered, and continues to suffer, harm, including, but not limited to, lost wages, restricted future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish and other economic and non-economic damages.

64. Defendants' retaliatory actions were willful, malicious or wanton.

## PRAYER FOR RELIEF

**WHEREFORE**, Giagrande respectfully requests the following relief:

(a) An injunction to restrain Defendants' continued unlawful conduct;

(b) Reinstatement, including full fringe benefits and seniority rights;

(c) Compensation for lost wages, benefits and other remuneration;

(d) An award of punitive damages;

(e) An award of liquidated damages;

(f) Prejudgment and post-judgment interest; and

(g) Such further relief as the Court may deem just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: September 27, 2024
New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
Valdi Licul

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com

*Counsel for Plaintiff*