UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   3/16/2026

JASON GIAGRANDE,

                    Plaintiff,

          -against-

XTM, INC.,

                    Defendant.

24-cv-7325 (MKV)

OPINION AND ORDER GRANTING
MOTION TO DISMISS
PLAINTIFF'S SECTION 215 CLAIM

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Jason Giagrande brings this action against his former employer Defendant XTM, Inc., a financial technology firm that serves the hospitality industry [ECF Nos. 1 (Compl." or the "Original Complaint"), 17 ("AC" or the "Amended Complaint")]. Giagrande alleges that, while he was employed by XTM, "he began protesting . . . what he believed were illegal activities" by XTM, and XTM thereafter "stopped paying" Giagrande's salary, "effectively – and unlawfully – terminating his employment." Compl. ¶ 1; AC ¶ 1. Giagrande filed the Original Complaint against both XTM and its Chief Executive Officer ("CEO"), asserting a claim for breach of the parties' employment agreement (the "Agreement"), several torts, and a claim for retaliation in violation of New York Labor Law Section 740. *See* Compl. ¶¶ 39–64.

XTM and its CEO responded to the Original Complaint with an answer and counterclaims [ECF Nos. 11, 13 ("Counterclaims")]. The Counterclaims allege that Giagrande breached the Agreement and committed torts by abandoning his duties to XTM and starting his own company that directly competed with XTM while still employed by XTM. *See* Counterclaims ¶¶ 5–63. In response to the Counterclaims, Giagrande filed the Amended Complaint, which adds a new claim against XTM for "threatening and then filing" allegedly retaliatory "counterclaims against

1

[Giagrande] in violation of [New York] Labor Law § 215." AC ¶ 70. The Amended Complaint also removes the CEO of XTM as a defendant. *See id.* ¶ 4.

XTM now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss only Giagrande's claim for retaliation, arising out of the Counterclaims, brought under Section 215 of the New York Labor Law [ECF Nos. 27, 28]. As New York courts have repeatedly explained, "[i]t is the rare case that the filing of a counterclaim can serve as the basis for a retaliation claim" under Section 215. *Arevalo v. Burg*, 129 A.D.3d 417, 417, 10 N.Y.S.3d 231, 231 (1st Dep't 2015) (quoting *Klein v. Town & Country Fine Jewelry Grp., Inc.*, 283 A.D.2d 368, 369, 725 N.Y.S.2d 42, 43 (1st Dep't 2001)). Because Giagrande fails to offer sufficient factual allegations that the Counterclaims are baseless, and for all of the reasons set forth below, this is not that rare case, and the motion to dismiss is GRANTED.

## I.    BACKGROUND

### A.  Facts[1]

Defendant XTM, Inc. is a Canadian financial technology firm that serves the hospitality industry. AC ¶ 4. XTM hired Plaintiff Jason Giagrande as its Head of Business Strategy for the United States in May 2021 pursuant to an Executive Employment Agreement [ECF No. 17-1 (the "Agreement")]. *Id.* ¶ 9. XTM hired Giagrande for his "extensive experience and connections within the hospitality industry." Counterclaims ¶ 7; *see* AC ¶ 18; *id.* at 11. He "was responsible for integrating XTM into the U.S. market." AC ¶ 10.

---

[1] The facts are drawn from the Amended Complaint and, for purposes of this motion, accepted as true [ECF No. 17 ("AC")]. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Amended Complaint includes the Executive Employment Agreement, which is attached as an exhibit [ECF No. 17-1 (the "Agreement")]. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("the complaint is deemed to include any written instrument attached to it as an exhibit," "any statements or documents incorporated in it by reference," and any "document 'integral' to the complaint"). The Court also draws on the allegations in the Counterclaims, which is "integral" to the Amended Complaint, because the Section 215 claim (*i.e.*, the subject of the pending motion) arises entirely out of the Counterclaims, a document of which Giagrande had "possession" and "knowledge and relied on" in filing the Section 215 retaliation claim in the Amended Complaint. *Chambers*, 282 F.3d at 153.

Under the Agreement, Giagrande was entitled to a certain salary. *See* Agreement § 4(a). In exchange, he was obligated to "serve [XTM] diligently and faithfully in the performance of his duties." *Id.* § 3. Giagrande also agreed not to compete with XTM during his employment and for a period thereafter. *See id.* §§ 3, 6. In particular, as pertinent to the Counterclaims, the Agreement provides that Giagrande would "not be precluded from" engaging in other work while working for XTM provided that he: did "not Compete" with XTM, and "continue[d] to devote the amount of his efforts, skill, attention, and energies as is reasonably necessary to the performance of his duties of employment under this Agreement." *Id.* § 3.

Giagrande alleges that, beginning in 2022, he "began to voice significant concerns" to the CEO "about what he believed were unlawful investor disclosures and violations of regulatory rules." AC ¶ 19. He "protested that XTM was not properly insured under Canadian law." *Id.* ¶ 27. "In or about mid-2022, Giagrande protested XTM's payments to a vendor hired to buy and sell XTM stock," which he believed was illegal "wash trading." *Id.* ¶¶ 30, 31. Giagrande alleges that the CEO was dismissive of his concerns. *See id.* ¶¶ 24, 26, 29.

According to Giagrande, "in or about January 2023, XTM stopped paying Giagrande's salary, as required by his [E]mployment [A]greement, effectively terminating his employment." *Id.* ¶ 32. He alleges that, as such, he later "terminated the Agreement for Good Reason on August 15, 2023." *Id.* ¶ 34. Giangrande contends that XTM stopped paying him, and thus effectively terminated him, as retaliation for his "disclos[ing] to XTM activities, policies or practices that he reasonably believed were in violation of law, rule or regulation." *Id.* ¶ 64

XTM offers a contrary account of the dissolution of the parties' relationship. XTM alleges that Giagrande failed to "generate a single dollar of new business" for XTM. Counterclaims ¶ 2. According to XTM, after the "first few months," Giagrande abandoned his duties to XTM and,

instead, focused on his own company, Hospitality Farm LLC, which allegedly "provides solutions for the hospitality industry" in direct competition with XTM.  *Id.* ¶¶ 11, 18, 19, 23, 26, 32.  For example, XTM alleges that Giagrande "had previously represented that he could connect XTM with the [American Express] Centurian Club, but no such connection ever materialized."  *Id.* ¶ 24.  Yet, XTM alleges, Giagrande did pursue "an initiative with the AMEX Centurian Club" on behalf of Hospitality Farm.  *Id.* ¶ 23.

XTM further alleges that, in May 2022, Giagrande "removed all references to XTM" from his "LinkedIn profile," but "continued to identify himself as the founder and manager of Hospitality Farm on its website and on [his] LinkedIn profile."  *Id.* ¶¶ 20, 23.  He also "ceased reporting" to the CEO of XTM when she requested updates on his activities.  *Id.* ¶ 22.  According to XTM, it continued to pay Giagrande long after he breached the Agreement.  *Id.* ¶ 31.

Thereafter, in June 2024, Giagrande, through counsel, notified XTM of his intention to file this lawsuit.  AC ¶ 38.  Giagrande alleges that XTM quickly "threatened to countersue."  *Id.* ¶ 39.  He asserts that XTM "retaliated against Giagrande by threatening and then filing counterclaims against him in violation of Labor Law § 215."  *Id.* ¶ 70.[2]

## B.  Procedural History

Giagrande initiated this action by filing a complaint against both XTM and its CEO [ECF No. 1 ("Compl." or the "Original Complaint")].  The Original Complaint asserted claims for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) unjust enrichment, (4) unpaid wages in violation of New York Labor Law Section 193, and (5) retaliation

---

[2] In connection with his claim under Section 740 of the New York Labor Law, which is not the subject of the pending motion to dismiss, Giagrande asserts that "XTM retaliated against Giagrande by, among other things, refusing to pay his earned compensation, terminating his employment and filing a baseless lawsuit against him." AC ¶ 65. Giagrande does not assert that the Counterclaims are "baseless" in connection with the Section 215 claim or allege facts in support of such an assertion.

in violation of New York Labor Law Section 740.  Compl. ¶¶ 39–64.  The two defendants filed an answer to the Original Complaint and, in a separate document, filed counterclaims [ECF Nos. 11, 13 (the "Counterclaims")].

In response, Giagrande filed the Amended Complaint [ECF No. 17 ("AC" or the "Amended Complaint")].  The Amended Complaint asserts all of the same causes of action in the Original Complaint and adds a claim against XTM for "threatening and then filing" allegedly retaliatory "counterclaims against [Giagrande] in violation of [New York] Labor Law § 215."  AC ¶ 70; *see id.* ¶¶ 68–72 (the "Sixth Cause of Action" or the "Section 215 Claim").  The Amended Complaint also removes the CEO of XTM as a defendant.  *See id.* ¶ 4.

In accordance with the Court's Individual Rules of Practice, XTM filed a pre-motion letter requesting leave to file a motion to dismiss only the Sixth Cause of Action, *i.e.*, the Section 215 Claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Giagrande failed to allege a *prima facie* case of retaliation based on XTM's filing of the Counterclaims [ECF No. 21].  Giagrande file a letter in opposition [ECF No. 23].  The Court thereafter issued an Order granting XTM leave to file its contemplated motion to dismiss and granting Giagrande leave to file a second amended complaint before XTM filed its motion [ECF No. 24 ("Order")].  The Court warned Giagrande that it would be his "**last opportunity to amend in response to any issue raised in the pre-motion letters, and failure to do so will be considered a waiver**."  Order at 1 (emphasis in original).  Giagrande, however, filed a letter expressly "stat[ing] that he does not intend to amend his pleading further" [ECF No. 25].

XTM thereafter filed its motion to dismiss only the Section 215 Claim [ECF Nos. 27, 28 ("Mem.")]. Giagrande filed an opposition to the motion [ECF No. 32 ("Opp.")].  XTM filed a reply [ECF No. 33].  Meanwhile, XTM has otherwise answered the Amended Complaint, and the parties

have conducted discovery [ECF Nos. 29, 47, 51].

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (emphasis added). A court does not "credit" mere "conclusory" assertions "or legal conclusions couched as factual allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188–89 (2d Cir. 2020) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)).

## III.    DISCUSSION

Giagrande asserts a claim for retaliation in violation of Section 215 based on allegations that XTM "threaten[ed] and then fil[ed] counterclaims against" Giagrande after he had "engaged in protected activity" by filing this lawsuit. AC ¶¶ 69, 70.  However, to state a claim under Section 215 for retaliation based on a counterclaim, a plaintiff must allege that the counterclaim was filed both with a retaliatory motive and without any reasonable basis in fact or law.  *See Kim v. Lee*, 576 F. Supp. 3d 14, 31 (S.D.N.Y. 2021), *aff'd*, No. 22-61, 2023 WL 2317248 (2d Cir. Mar. 2, 2023); *Pawlowski v. Kitchen Expressions Inc.*, 2017 WL 10259773, at *5 (E.D.N.Y. Dec. 15, 2017); *see also Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 472–74 (S.D.N.Y. 2008).  Here, Giagrande fails to state a claim because he fails to allege facts from which the Court can infer that the Counterclaims are totally baseless.

To state a *prima facie* case of retaliation in violation of Section 215, "the plaintiff must allege '(1) participation in protected activity known to the defendant," (2) an adverse employment

action, and "(3) a causal connection between the protected activity and the adverse employment action.'" *McSweeney v. Cohen*, 776 F. Supp. 3d 200, 274–75 (S.D.N.Y. 2025) (quoting *Zhang v. Centene Mgmt. Co., LLC*, 2023 WL 2969309, at *11 (E.D.N.Y. Feb. 2, 2023)); *see Robinson v. De Niro*, 739 F. Supp. 3d 33, 75 (S.D.N.Y. 2023). XTM does not contest that Giagrande satisfies the first prong of this test. Mem. at 5. Rather, XTM principally argues that Giagrande fails to allege an adverse employment action.[3] *Id.*

Although the Second Circuit has declined to weigh in on this question, the great run of district courts in this Circuit have concluded that a "counterclaim cannot . . . constitute an adverse employment action unless it is frivolous." *Pawlowski*, 2017 WL 10259773, at *5; *see Kim v. Lee*, 2023 WL 2317248, at *3 n.2 (2d Cir. Mar. 2, 2023) (declining to decide "whether and under what circumstances a non-frivolous counterclaim may constitute unlawful retaliation" under Section 215); *Figueroa-Torres v. Kleiner*, No. 20-cv-4851 (KPF), 2022 WL 768483, at *10 n.10 (S.D.N.Y. Mar. 14, 2022) (explaining that, while there are outliers, the "greater number of courts . . . have required that a filing made in the course of an ongoing litigation be *both* baseless *and* made in bad faith in order to constitute an adverse employment action for purposes of a retaliation claim," and declining to "depart from the majority position of courts in the Second Circuit") (emphasis in

---

[3] Whether Plaintiff was effectively terminated, as he alleges, or resigned, as XTM contends, there is no question that Plaintiff's employment ended long before the Counterclaims were filed. *See* AC ¶ 32; Counterclaims ¶ 28. This raises the question of whether a former employee can allege that a new adverse employment action has occurred after his employment has ended. In applying a different statute (Title VII), the Second Circuit has held that a former employee "may be able to state a claim for retaliation, even though they are no longer employed by the defendant company" based on allegations that the defendant has done something to harm the former employee's future job prospects. *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997). In the context of Section 215 suits, district courts in this Circuit have concluded that the statute covers "post-employment retaliation" and that the former employee need not prove such retaliation "impair[s] [the] plaintiff's job prospects." *Robinson*, 739 F. Supp. 3d at 112; *see Alvarado v. GC Dealer Servs. Inc.*, 511 F. Supp. 3d 321, 358 (E.D.N.Y. 2021); *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 509 (S.D.N.Y. 2013). In all events, that Plaintiff's employment ended before the Counterclaims were filed is immaterial because, as explained below, Plaintiff fails adequately to allege that the Counterclaims are baseless or were filed in bad faith.

original); *Hafizov v. BDO USA, LLP*, No. 22-cv-8853 (JPC) (RWL), 2023 WL 4697312, at \*4 (S.D.N.Y. July 24, 2023) (same).

Instructions from the Supreme Court of the United States and New York courts support the majority position that a counterclaim must be frivolous to constitute an adverse action under Section 215. In particular, the Supreme Court has explained that employers, as well as employees, have a First Amendment right to petition courts for redress. *See BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 530–33 (2002); *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 741–43 (1983); *see also Robinson*, 739 F. Supp. 3d 89–90; *McSweeney*, 776 F. Supp. 3d at 254. "Courts have carved out" a limited "exception" to that right "where the lawsuit in question was groundless or baseless." *Nunez v. Metro. Learning Inst., Inc.*, 2021 WL 1176219, at \*4 (E.D.N.Y. Mar. 29, 2021) (internal quotation marks and citations omitted); *see BE & K Constr.*, 536 U.S. at 530. Thus, allowing an employee to proceed on a Section 215 retaliation claim based solely on the employer's assertion of counterclaims "[a]bsent both elements" – retaliatory motive and baselessness – "would raise First Amendment issues." *Kim*, 576 F. Supp. 3d at 31; *see Hafizov*, 2023 WL 4697312, at \*5; *Figueroa-Torres*, 2022 WL 768483 at \*10 n.10.

Furthermore, as the First Department has stressed in the context of a Section 215 claim, "[i]t is the rare case that the filing of a counterclaim can serve as the basis for a retaliation claim." *Arevalo*, 129 A.D.3d at 417, 10 N.Y.S.3d at 231; (quoting *Klein*, 283 A.D.2d at 369, 725 N.Y.S.2d at 43). The First Department further explained that a "defendant's interposition of what appear to be valid counterclaims would not dissuade a reasonable worker from suing his or her employer for violating the Labor Law." *Id*. (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "The risk of a [nonfrivolous] lawsuit for wrongful conduct on the job is one that 'all

8

employees experience,'" rather than illegal retaliation.  *Robinson*, 739 F. Supp. 3d at 90 (quoting *Burlington N. & Santa Fe Ry.*, 548 U.S. at 68).

The First Department has explained that "[e]mployers should . . . not be discouraged from expressing their own potential claims."  *Klein*, 283 A.D.2d at 369, 725 N.Y.S.2d at 43.  Courts in this Circuit have likewise ruled that "the employer should not be required to forfeit a potentially meritorious claim against its employee simply because the employee has brought a claim against the employer."  *McSweeney*, 776 F. Supp. 3d at 254 (quoting *Sherman v. Fivesky, LLC*, No. 19-cv-8015 (LJL), 2020 WL 5105164, at *6 (S.D.N.Y. Aug. 31, 2020)); *see Grauer v. UBS Fin. Servs.*, Inc., No. 07-cv-5450 (LAP), 2008 WL 11398936, at *8 (S.D.N.Y. Dec. 17, 2008)).  Indeed, due process requires permitting an employer the "opportunity" to present defenses and counterclaims.  *McSweeney*, 776 F. Supp. 3d at 254 (quoting *Lindsey v. Normet*, 405 U.S. 56, 66 (1972)); *see also Hafizov*, 2023 WL 4697312, at *5 ("where the employee has already filed" a lawsuit, the employer is entitled to "vigorously defend[] itself," including by "asserting viable counterclaims," and "no reasonable employee should expect the employer-defendant [to] simply surrender in the face of litigation") (internal quotation marks and citations omitted).

Here, Giagrande does not allege facts supporting an inference that the Counterclaims are frivolous.  Rather, the sum total of his factual allegations with respect to the Section 215 Claim are that, when Giagrande's counsel informed XTM of his intention to file this lawsuit, XTM "threatened the counterclaims," and, after Giagrande filed the suit, XTM "countersued."  AC ¶¶ 39, 41; *see id.* ¶¶ 69, 70.  These allegations merely establish that XTM "express[ed] [its] own potential claims" and is now asserting them, which XTM is entitled to do, provided that the Counterclaims are not baseless.  *Klein*, 283 A.D.2d at 369, 725 N.Y.S.2d at 43; *see Arevalo*, 129 A.D.3d at 417; *Kim*, 576 F. Supp. 3d at 31.

9

In the Amended Complaint, Giagrande asserts his conclusion that XTM threated and filed the Counterclaims "to dissuade" him from pursuing his rights under New York Labor Law and to retaliate against him.  AC ¶¶ 39, 41, 70.  Elsewhere, in connection with another claim, Giagrande asserts in passing that XTM has filed "a baseless lawsuit against him."  *Id.* ¶ 65.  However, the Court is not required to "credit" such "conclusory" assertions and "legal conclusions couched as factual allegations."  *Dane*, 974 F.3d at 188–89 (quoting *Nielsen*, 746 F.3d at 62).  The Amended Complaint is devoid of "*factual* content" to support a reasonable inference that the Counterclaims are baseless.  *Iqbal*, 556 U.S. at 678 (emphasis added).

In his brief, Giagrande asserts that XTM "outright admitted its retaliatory plans" when it wrote: "Should Giagrande pursue litigation, XTM not only intends to vigorously defend any lawsuit, but also seek compensation for the damage caused to the company by Giagrande's misconduct."  Opp. at 1–2.  As an initial matter, the quoted language does not appear anywhere in the Amended Complaint, Giagrande expressly declined the opportunity to amend his pleading further before XTM filed its motion [ECF No. 25], "and it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."  *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989); *see Cruz v. City of New York*, No. 15-cv-2265 (PAE), 2016 WL 234853, at *6 (S.D.N.Y. Jan. 19, 2016) (collecting cases).  In any event, contrary to Giagrande's assertion, the quoted language is not an admission of liability.  XTM does not, in any way, suggest that its contemplated Counterclaims are baseless.  Rather, XTM asserts that it is entitled to "damage[s]" for alleged "misconduct" by Giagrande.  Opp. at 2.

The Counterclaims, which document is integral to the Amended Complaint, offer factual allegations sufficient to preclude ruling that the Counterclaims are "objectively baseless."  *Kim*, 576 F. Supp. 3d at 31; *see Chambers*, 282 F.3d at 153.  XTM alleges, among other things, that

10

Giagrande breached his contract with XTM by failing to "devote the amount of his efforts, skill, attention, and energies as is reasonably necessary to the performance of his duties" and, instead, devoted his efforts to his own company, which allegedly competed with XTM. Agreement §§ 3, 6; *see* Counterclaims ¶¶ 11, 18, 19, 23, 26, 32. XTM offers specific allegations that, after the first few months of working for XTM, Giagrande failed to provide requested status reports to the CEO, deleted all references to XTM from his LinkedIn profile, and pursued a specific opportunity with the American Express Centurion Club on behalf of his own company but failed to do the same for XTM. *See* Counterclaims ¶¶ 20, 22, 23–24. In light of these allegations, the Counterclaims are not frivolous. It is notable that, in response to the Counterclaims, Giagrande filed the Amended Complaint adding the Section 215 Claim, but he has not moved to dismiss the Counterclaims for failure to state a claim.

XTM further argues that its Counterclaims "are not only valid and meritorious, but must be considered compulsory under Federal Rule of Civil Procedure 13(a)." Mem. at 1, 9–10. Under Rule 13(a), a defendant is required to "state as a counterclaim any claim" that it "has against" the plaintiff that "arises out of the [same] transaction or occurrence" as the plaintiff's claims. Fed. R. Civ. P. 13(a)(1)(A). XTM is correct that, pursuant to Rule 13(a), XTM must assert any claim it has against Giagrande, arising out of the same series of events, in this lawsuit, or XTM forfeits its rights. *See id.*; *Harris v. Steinem*, 571 F.2d 119, 122 (2d Cir. 1978) ("a compulsory counterclaim . . . must be pleaded or be forever barred"). And "[t]he courts in this District have repeatedly held that 'a compulsory counterclaim is not actionable for retaliation unless it is totally baseless.'" *Sherman*, 2020 WL 5105164, at *6 (alteration adopted) (quoting *Torres*, 628 F. Supp. 2d at 474); *see Eng-Hatcher v. Sprint Nextel Corp.*, 2008 WL 4865194, at *4 (S.D.N.Y. Oct. 31, 2008). As explained above, the Counterclaims are not totally baseless.

Accordingly, consistent with the weight of authority in this Circuit, the Court concludes that Giagrande cannot state a claim for retaliation under Section 215 against XTM based solely on its nonfrivolous Counterclaims. Of course, Giagrande may ultimately prevail on his other claims against XTM, which include a separate retaliation claim, and on the Counterclaims against him. Giagrande simply may not proceed on his Section 215 Claim seeking to hold XTM liable merely for pursuing the Counterclaims. As the Supreme Court has explained, "even unsuccessful but reasonably based suits" have a role in our system. *BE & K*, 536 U.S. at 532.

### IV.    CONCLUSION

For the reasons set forth above, the motion of XTM to dismiss Giagrande's Sixth Cause of Action only [ECF No. 27] is GRANTED. The Clerk of Court respectfully is requested to terminate the motion at docket entry 27.

**SO ORDERED.**

**Date:  March 16, 2026**                                          **MARY KAY VYSKOCIL**
      **New York, NY**                                          **United States District Judge**