# THE SIEGEL LAW FIRM, P.C.

COUNSELORS AT LAW
591 STEWART AVENUE- SUITE 550.
GARDEN CITY, NEW YORK 11530
PHONE: (516) 558-7559
FAX:    (888) 315-8363

February 11, 2026

**VIA ECF**
Hon. Mary Kay Vyskocil
United States District Court
Southern District of New York
500 Pearl Street, Room 2230
New York, NY 10001

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  3/25/2026
```

Re:    *Jason Giagrande v. XTM, Inc.*
        Case No. 1:24-cv-07325

Dear Judge Vyskocil:

This office represents Defendant, XTM, Inc. ("Defendant"), in the above-captioned action.  This joint letter is submitted pursuant to Fed. R. Civ. P. 37, Local Rule 37.2 and Your Honor's Individual Part Rules, seeking a discovery conference. Plaintiff alleges claims for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Unjust Enrichment, Violations of New York Labor Law Section 193, Violation of New York Labor Law Section 740, and Violation of New York Labor Law Section 215.

**Defendant's Position**

On January 16, 2026, this office forwarded correspondence to Plaintiff's attorneys detailing deficiencies in their document production.  On February 4, 2026, Plaintiff's counsel responded with correspondence and some additional document production.  However, Plaintiff renewed their objections, and indicated that they will not be producing documents in connection with Defendant's Document Request Nos. 16, 17, and 50.  Defendant's Document Request No. 16 requests "All documents relating to Hospitality Farm's business between January 1, 2021 through August 31, 2023."  Document Request No. 17 requests "All documents relating to Hospitality Farm's revenues between January 1, 2021 through August 31, 2023."  Defendant's Document Request No. 50 requests "All documents evidencing taxes that you paid from any wages or income that you earned from XTM."

Plaintiff alleges that he was an employee of Defendant, however, Defendant disputes this, and maintains that Plaintiff was an independent contractor.  It is undisputed that during the period of time that Plaintiff performed services for Defendant, his company, Hospitality Farm, submitted invoices directly to Defendant, labeled for "Consulting".  Based on the aforesaid, Defendant is entitled to documents related to Hospitality Farm's business, revenues, and bank statements so that Defendant can fully defend its case, particularly as it relates to Plaintiff's business with Hospitality Farm and whether such business records assists in demonstrating that Plaintiff was an independent contractor.  Plaintiff first produced document production in mid-November 2025, and forwarded a deficiency letter on January 16, 2026.  After granting Plaintiff additional time to respond, Plaintiff responded on February 4, 2016.

Similarly, with respect to tax related documents, the information sworn to by Plaintiff on his returns are clearly relevant.  At his deposition on February 9, 2026, Plaintiff's testimony was consistent with him being and filing taxes as an independent contractor.  It became clear at Plaintiff's deposition the significance of these documents to this matter, and their importance to Defendant's defense.  The Court has held that "Plaintiffs' tax filings are plainly relevant to the independent contractor versus employee inquiries – and may well make it difficult for Plaintiff to prevail on the issue come trial". *Landaeta v. New York and Presbyterian Hosp., Inc.*, 2014 WL 836991 (S.D.N.Y. 2014).  As such, Defendant is entitled to Plaintiff's tax documents in order to fully defend itself from Plaintiff's claim that he was an employee.

The parties met and conferred on this matter via electronic video "Zoom" prior to the deposition of the Plaintiff on February 9, 2026.

As discovery is scheduled to close on February 13, 2026, it is respectfully requested that the date to complete discovery be extended by thirty (30) days, or to a date that the Court deems appropriate, so that the discovery issues set forth herein can be resolved.  Additionally, during Plaintiff's deposition, it was first discovered that there were separate tax filings made for Hospitality Farm.  Defendant requested additional documents from Plaintiff, and the Court reporter advised that it will take approximately two weeks to provide the transcript.  During his deposition, Plaintiff testified that he was a paid consultant to another third-party during his time working for Defendant, which evidences the importance of communication records with the other entity.  Since this firm's retention, significant discovery has been completed.  Specifically, a confidentiality stipulation was executed between the parties, document production was produced between the parties, the parties exchanged interrogatories responses and requests to admit, and depositions of the Plaintiff and Defendant's CEO were completed.

**Plaintiff's Position**

**A.     XTM's Motion is Untimely**

The Court's Individual Rules direct parties to "seek relief with respect to discovery in sufficient time to obtain a ruling and any further discovery that is ordered in advance of the discovery cutoff." Rule 3(E).  The Individual Rules also state that "[i]f a party waits until near the close of discovery to raise an issue that could have been raised earlier, the party is unlikely to be granted the relief that it seeks, let alone more time for discovery."  Id.  And, in this specific case, the Court granted Defendant XTM essentially a six-month extension of the discovery deadline to obtain new counsel but again warned that "there will be NO extensions absent truly extraordinary and unforeseeable circumstance" and put the parties "on notice that the Court will not extend fact discovery in light of information discovered at a deposition they waited until the last minute to conduct."  ECF 47 at 1 & 2.

Here, despite these clear directives, XTM waited more than four months after Giagrande objected to certain document requests to first raise the discovery disputes with Giagrande and then nearly another month to draft its portion of a joint letter to the Court seeking relief.  Specifically, on September 3, 2025, Giagrande served on XTM his responses and objections to XTM's document requests.  XTM, however, waited until January 16, 2026 – less than one month before the February 13, 2026 extended discovery deadline – to first raise these disputes with Giagrande.[1]  XTM then waited until February 10, 2026 –

---

[1]     Giagrande was prepared to serve his responses within the 30 days as prescribed by Fed. R. Civ. P. 34(b)(2)(A), but XTM repeatedly requested mutual extensions while the parties engaged in settlement discussions.  Then on July 22, 2025,

three days before the close of discovery – to send to Giangrande its portion of a joint letter under Individual Rule 3(D).[2]  Because of XTM's inexcusable delays, the Court should deny XTM's requests to compel discovery and an extension of the discovery deadline for the Court to rule on these issues.

For similar reasons, the Court should also deny XTM's request for an extension for additional discovery.  As explained above, XTM understood if it "waited until the last minute" to conduct a deposition, the Court would not extend the deadline "in light of information discovered" at a deposition. ECF 47 at 2.  XTM nevertheless waited until the last week of discovery to take Giagrande's deposition.[3] Regardless, none of the information XTM purports to seek was "discovered" during Giangrande's deposition.  For instance, XTM wants additional time to seek business information about Hospitality Farm (a business that Giagrande operated while employed by XTM) and American Express Centurion Club (Hospitality Farm's customer).  But this is hardly new information.  Both entities are mentioned in XTM's Counterclaim, ECF 13 at ¶¶ 11-12, 23-24, and XTM already sought information about these entities in prior discovery requests, to which Giagrande objected.  In short, XTM has no excuse for its delay.

### B.      XTM's Motion is Meritless

In addition to being untimely, XTM's motion is without merit.  XTM argues that it needs information concerning Hospitality Farm's business and revenue for the period of Giagrande's employment (Request Nos. 16 and 17) to "demonstrate that [Giagrande] was an independent contractor," rather than an employee.  But Giagrande does not dispute that he operated Hospitality Farm while employed by XTM.  Rather, Giagrande contends that he is an employee because, *inter alia*, he entered into an "Executive Employment Agreement" (the "Employment Agreement") that identified XTM as Giagrande's "employer" with full control over Giagrande's work, including requiring that Giagrande "report directly to the CEO" and "perform[] such duties and functions commonly within the scope of and duties of a Vice President" as well as "other duties and functions as may be reasonably assigned or delegated to [him] from time to time."  ECF 17-1, at 4; see Bynog v. Cipriani Grp., Inc., 1 N.Y.3d 193, 198 (2003). That Giagrande also operated Hospitality Farm makes no difference because the Employment Agreement permitted Giagrande to "act[] as a consultant or employee for any other entity provided that [Giagrande] does not Compete with [XTM]."  ECF 17-1, at 4.  In other words, the Hospitality Farm information XTM seeks is wholly irrelevant to any claim or defense.

XTM further claims that it needs Giagrande's tax information (Request No. 50) for the same reason – to show that Giagrande was not an employee but an independent contractor.  However, courts are "typically reluctant to compel" disclosure of tax returns because of the privacy interest involved. Rosas v Alice's Tea Cup, LLC, 127 F. Supp. 3d 4, 11 (S.D.N.Y. 2015).  To compel production of tax returns, the movant must show (1) that the tax returns are relevant to the litigation and (2) there are no less intrusive means to obtain this information.  Melendez v. Primavera Meats, Inc., 270 F.R.D. 143, 144 (E.D.N.Y. 2010); see Pyron v. Banque Francaise Du Commerce Exterieur, 256 A.D.2d 204, 205 (N.Y.

---

XTM's counsel at Seyfarth Shaw LLP withdrew and the Court held all pending deadlines in abeyance until XTM found new counsel.  ECF 38.  The Court then set a new discovery deadline of February 13, 2025, "as if this were a new case." ECF 47 at 1.

[2]      Giagrande drafted and returned his section the next day.

[3]      XTM waited to until January 6, 2026, to serve Giangrande with a deposition notice for Friday, February 6, 2026. Giangrande requested that the deposition take place on Monday, February 9, 2026, because his principal trial counsel was out of the country the prior week.

App. 2d Dep't) (finding that the plaintiff's tax returns were irrelevant where, as here, "the employment agreement at issue provides for a liquidated sum and there is no issue of mitigation").  In short, tax returns are "subject to a quasi-privilege; they will be ordered disclosed only if they are relevant and the information sought is not readily available from other sources."  Hanoch v. Janoff & Olshan, Inc., No. 98 Civ. 3862 (LMM), 1999 WL 262278, at *1 (S.D.N.Y. May 3, 1999) (internal quotations omitted) (ordering partial production of tax returns where, unlike here, Plaintiff sought damage for lost past and future earnings).

XTM has not made that showing here.  As explained above, the basis for Giagrande's claim that he was an XTM employee is his Agreement with XTM and, as unequivocally set forth in that Agreement, the control XTM and its CEO had over Giagrande's work.  Moreover, even if this information were relevant (and it is not), XTM already has copies of the invoices submitted by Giagrande and presumably has its own tax documents concerning payments to Giagrande or Hospitality Farm, making it unnecessary for Giagrande to produce his tax returns.  Gattegno v. Pricewaterhousecoopers, LLP, 205 F.R.D. 70, 74 (D. Conn. 2001) (denying motion to compel plaintiff's tax returns where defendant-employer already had employer-issued tax forms).[4]

And, finally, in addition to seeking information that is not relevant and quasi privileged, XTM's request for tax information is wholly overbroad.  XTM has made no effort to explain why it would need the entirety of Giagrande's tax returns.  Rather, only those parts of the tax returns concerning payments by XTM are even arguably relevant.

For these reasons, Giagrande respectfully requests that the Court deny XTM's motion.

In light of the parties' disputes about whether Giagrande was an independent contractor and whether he abandoned his duties to XTM to pursue his own allegedly competing business, Hospitality Farms, the Court concludes that XTM's document requests, outlined above, are relevant to this action. The Court is not persuaded that XTM's request for relief in connection with the parties' discovery dispute was untimely, since XTM filed its letter request within a week of Giagrande's further production and within two days of the parties' meet-and-confer (and that meet-and-confer was a required precondition for filing the letter). As such, XTM's request for 30 days to complete discovery on these specific issues is GRANTED.  All other discovery is closed.  The Clerk of Court respectfully is requested to terminate ECF No. 51.

Date:  March 25, 2026
New York, New York

_Mary Kay Vyskocil_
Mary Kay Vyskocil
United States District Judge

Respectfully Submitted,
/s _Bradley R. Siegel_
By: Bradley R. Siegel, Esq.
The Siegel Law Firm, P.C.
591 Stewart Avenue, Suite 550
Garden City, New York 11530
T: (516) 558-7559
F: (888) 315-8363

---

[4]   XTM admits that Giagrande also produced the "invoices" he submitted to XTM, which are "labeled for 'Consulting.'"  However, "it is not significant . . . how the worker identified h[im]self on tax forms."  Hart v. Rick's Cabaret Intern., Inc., 967 F. Supp. 2d 901, 924 (S.D.N.Y. 2013).  Rather, "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results."  Id. at 923 (quoting Bynog v. Cipriani Grp., Inc., 1 N.Y.3d 193, 198 (2003)).  Regardless, as Giagrande explained at his deposition, he had no choice but to send the invoices through Hospitality Farm because XTM, a company based in Toronto, Canada, had no method to pay Giagrande his salary as a United States employee.